## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MBA ENGINEERING, INC., as Sponsor** | § | |
| **and Administrator of the MBA** | § | |
| **ENGINEERING, INC. EMPLOYEES** | § | |
| **401(K) PLAN and** | § | |
| **the MBA ENGINEERING, INC.** | § | |
| **CASH BALANCE PLAN, and** | § | |
| **CRAIG MEIDINGER, as Trustee** | § | |
| **of the MBA Engineering, Inc.** | § | |
| **Employees 401(k) Plan and the MBA** | § | |
| **Engineering, Inc. Cash Balance Plan,** | § | |
| **Individually and as representative of all** | § | |
| **others similarly situated,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Case No: _____** |
| | § | |
| | § | |
| **MATRIX TRUST COMPANY, and** | § | |
| **MATRIX SETTLEMENT AND** | § | |
| **CLEARANCE SERVICES, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## ORIGINAL CLASS ACTION COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiffs MBA Engineering, Inc. ("MBA"), as sponsor and administrator of the MBA Engineering, Inc. Employees 401(k) Plan (the MBA Engineering, Inc. Retirement Plan) and the MBA Engineering, Inc. Cash Balance Plan (collectively, the "Plans"), the Plans in their own right, and Craig Meidinger ("Meidinger"), as the Plans' Trustee (MBA, the Plans, and Meidinger collectively as, "Plaintiffs"), and, who on their own behalf and on behalf of others similarly situated, file this Class Action Complaint against Defendant Matrix Trust Company

("Matrix") and Defendant Matrix Settlement and Clearance Services, LLC ("MSCS" and collectively with Matrix, "Defendants") and would respectfully show the Court as follows:

## I.     INTRODUCTION

1.      This is a case for strict liability under the Employee Retirement Income Security Act of 1974 ("ERISA") and other sections of ERISA and state laws. Defendants unlawfully retained substantial amounts of monies from over 60,000 account holders ("Customers") through nondisclosure and concealment. Without discovery, Plaintiffs cannot estimate the total amount of money that Defendants unlawfully retained, but in all likelihood, the amounts total many millions of dollars, if not hundreds of millions or more.[1]

2.      As of this date, Defendants have retained, without satisfying strict disclosure obligations, three categories of monies: 12b-1 fees, non-float cash interest, and float cash interest (collectively, the "Funds"). Defendants retained Funds in each of these categories from large portions of (if not all) Customer assets which averaged roughly over $126 billion, in total, over the last six years.

3.      Because of this, Defendants are obligated to repay these Funds to their Customers under ERISA, ERISA's implementing regulations, and state law.

## II.     BACKGROUND INFORMATION

4.      Defendants are a custodian and service providers who primarily serve employee benefit plans qualified under ERISA. As a custodian, they are a fiduciary under ERISA. *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (citing 29 U.S.C. §

---

[1] For example, rates for 12b-1 fees alone, discussed below, commonly range from 0.25% to 0.75% per annum. This amount by itself would be very large considering Matrix averaged over $126 billion custodial assets over the relevant time period.

1002(14)(A) and holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA.").

5.      Custodians, like Defendants, are banks which take possession of Customer assets in exchange for a fee. During the last six years, Defendants experienced rapid growth. In just three years from 2014 to 2017, Defendants grew their business by more than 400% in customer assets to almost $200 billion. During this time of rapid and expansive growth, Defendants neglected multiple regulatory requirements imposed by ERISA and the U.S. Department of Labor ("DOL") which impose strict liability.

6.      A group of requirements Defendants violated, which is germane to this case, is the disclosure requirements under ERISA Section 408(b)(2). 29 U.S.C. § 1108(b)(2). As set out in more detail below, Defendants cannot retain any monies as compensation without complying with highly regulated and narrowly interpreted disclosure requirements. These disclosure requirements and notices are commonly referred to by the underpinning ERISA Section as "408(b)(2) Notices."

7.      Under ERISA, Defendants are strictly liable for any "transaction, if [Defendants] know or should know that such transaction constitutes a direct or indirect. . . sale or exchange, or leasing, of any property between the plan and a party in interest. . . [or] transfer to, or use by or for the benefit of a party in interest, of any asset of the plan." 29 U.S.C. § 1106(a)(1) ("Prohibited Transactions").

8.      ERISA's Prohibited Transaction section is broad in keeping with ERISA's mandated purpose of "guaranteeing" that participants receive benefits they are entitled to. *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 607 (1993) ("Congress wanted to guarantee that if a worker has been promised a defined pension

benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it.").

9.    Every payment of compensation to a custodian or other service provider, like Defendants, falls within ERISA's Prohibited Transaction definition and would give rise to liability but for a separate exception mechanism. 77 Fed. Reg. 23, at 5632 (Feb. 3, 2012) (DOL summarizing this structure). Congress intended the Prohibited Transactions to be the default position after years of study and drafting; therefore, Congress fashioned an exception for compensation to service providers, like custodians, rather than defining such compensation out of ERISA's Prohibited Transactions. *Id.*

10.    For that reason, ERISA Section 408(b)(2) saves service provider compensation from the broad Prohibited Transaction definition so long as multiple requirements are met (detailed below). 29 U.S.C. 1108(b)(2) (exempting "Contracting or making reasonable arrangements with a party in interest for. . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore."). 77 Fed. Reg. 23, at 5632 (Feb. 3, 2012).

11.    Defendants bear the burden of proving entitlement to a prohibited transaction exception. *E.g., Perez v. Bruister,* 823 F.3d 250, 265 (5th Cir. 2016) ("Defendants did not carry their burden to qualify for the ERISA § 408(e) adequate consideration affirmative defense, hence the transactions between the ESOP and BFLLC were prohibited by ERISA § 406(a)(1)(A)"); *Donovan v. Cunningham*, 716 F.2d 1455, 1468 (5th Cir. 1983) ("As the Supreme Court has observed in a different context, it seems 'fair and reasonable' to place the burden of proof upon a party who seeks to bring his conduct within a statutory exception to a broad remedial scheme.").

**Defendants' Disclosure Obligations and Violations**

12.     Defendants' key wrongdoings in this case stem from their failure to disclose that their Customers' assets were earning non-float cash interest, earning float cash interest, whether or how much they were earning 12b-1 fees, and that Defendants kept that money as compensation. Alternatively, Plaintiffs allege Defendants failed to disclose that they paid portions of the Funds to third parties or parties in interest, if discovery later shows they made such payments. Defendants failed to disclose all the foregoing in violation of multiple duties under ERISA and other laws.

13.     Defendants' disclosure obligations are rooted in the "reasonable compensation" requirement of ERISA Section 408(b)(2). 29 U.S.C. § 1008(b)(2) (only granting the prohibited transaction exception if compensation was reasonable). The DOL, acting pursuant to Congressional mandate and entitled to *Chevron* deference, has defined "reasonable compensation" to require, at a minimum, disclosure of compensation of any kind. 29 C.F.R. § 2550.408b-2(c)(1)(iv)(C). The requirement includes direct compensation, indirect compensation, any other kind of compensation, and expressly includes 12b-1 fees and float interest. *Id.*; DOL Field Assistance Bulletin No. 2002-03. Further, Defendants were required to provide these disclosures in writing. 29 C.F.R. § 2550.408b-2(c)(1)(iv); DOL Field Assistance Bulletin No. 2002-03.

14.     Custodians and service providers, like Defendants, must provide a direct written disclosure to their account holders of all compensation they will receive and pay to parties in interest. Those include 12b-1 fees and all cash-based interest, whether for cash in a float status or not. Custodians and service providers typically document their disclosures by requiring the customer to sign a written receipt and saving it to the customer's account file.

15.     Defendants, however, did no such thing. Defendants have a standard custodial account agreement they use for all customers that has not materially changed, for purposes of this

case, during the entire relevant time period. Defendants standard custodial account agreement does not provide 408(b)(2) notices for the Funds. Further, Defendants did not employ any other means to disclose that their customers' assets were generating the Funds and that Defendants kept them.

***Defendants Failed to Disclose 12b-1 Fees That They Unlawfully Kept***

16.    Defendants' custodial account agreement does not mention 12b-1 fees whatsoever among its compensation terms, and Defendants never provided supplemental disclosures to their Customers regarding 12b-1 fees. Defendants used the same custodial account agreement for all of its customers.

17.    ERISA and the DOL require all service providers and fiduciaries, including Defendants, to disclose the following to the plans: (1) the services that will be provided; (2) a description of all direct compensation; (3) a description of all indirect compensation which includes disclosure of the (a) exact service that money will be received for; (b) the identification of the payer of the compensation; and (c) a description of the arrangement between the payer and the fiduciary or service provider; and (4) a description of all fees charged directly against the plan's investment and the amount charged, identification of the services for which the compensation will be received, and identification of the payers. 29 C.F.R. § 2550.408b-2(c)(1)(iv).

18.    Rather than following these disclosure requirements, Defendants opted for an atypical and error-prone 408(b)(2) approach. Rather than ensuring its own compliance with ERISA Section 408(b)(2) and the DOL's regulations thereunder, as is required, Defendants ignored the process and purported to delegate their responsibility to provide Defendants' customers 408(b)(2) notices to third party administrators. Defendants cannot, however, shift their obligations to third parties pursuant to ERISA. *See* 29 U.S.C. § 1110(a) ("any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility,

obligation, or duty under this part [ERISA] shall be void as against public policy"). Further, those third parties also failed to provide the required disclosures.

19.    As of the date of this filing, Plaintiffs are already aware of over 100 of Defendants' customers who never received 408(b)(2) notices from Defendants concerning 12b-1 fees or the other Funds at issue. For example, Plaintiffs were falsely told by third parties that 90% of the 12b-1 fees Defendants would receive would be paid to the Plaintiffs. However, records now show that did not happen. Accordingly, Defendants have, without disclosure, either kept the 12b-1 fees entirely or paid portions of them to parties in interest. Discovery will reveal what Defendants did with the 12b-1 fees, but either case constitutes a prohibited transaction. Plaintiff is further informed and believes and, based thereon, alleges that many thousands more prohibited transactions exist by virtue of Defendants' error-prone and legally insufficient 408(b)(2) compliance approach.

***Defendants Failed to Disclose Cash Interest They Unlawfully Kept***

20.    In addition to 12b-1 fees, Defendants also kept the interest their Customers' cash generated. As the custodian, Defendants would hold cash for their Customers in two circumstances. The cash would be in either a "float" or "non-float" state. For either situation, Defendants assert in their custodial agreement that all interest earned by each Customer's assets will be applied to the Customer accounts. But this was false.

21.    Cash is in a float state where it is in the process of being disbursed or invested pursuant to instructions. *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800–01 (7th Cir. 2011). When it is not in a float state, Defendants would also hold the cash for its Customers. The cash, whether in a float state or not, produced interest, and Defendants retained this interest without disclosing it.

22.     Defendants never updated their custodial account agreement or took other actions to comply with ERISA after the DOL revised its regulations in 2002. In 2002, the DOL interpreted ERISA Section 408(b)(2) and identified minimum requirements for disclosure of float cash interest. Those requirements include (1) disclosing "specific circumstances under which float will be earned and retained"; (2) establishing, disclosing, and adhering to specific time frames when float cash will be invested; (3) disclosing when that float period commences; and (4) disclosing the rate or manner of determining float interest rate. DOL Field Assistance Bulletin No. 2002-03.

23.     Courts use this DOL guidance for purposes of ERISA liability. *See Ruppert v. Principle Life Ins. Co.*, 813 F.Supp.2d 1089 (S.D. Iowa 2010); *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 592 (S.D. Tex. 2003); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930–33 (9th Cir. 2006).

24.     Defendants failed to disclose these required items; therefore, they are not entitled to rely on ERISA Section 408(b)(2) for the float cash interest they retained.

***Defendants Failed to Disclose the Interest on Customer Cash Assets that They Unlawfully Retained.***

25.      In addition to unlawfully retaining 12b-1 fees and float cash interest, Defendants also kept all interest their Customers' cash earned. Defendants' form custodial agreement is completely silent on this form of compensation. Defendants also did not disclose the interest earned by their customer's cash anywhere else.

26.     To the contrary, Defendants' custodial account statements instead portrayed a deceptive picture that their Customers' cash did not earn any interest. Defendants provided Customer statements that represented that the Customers' assets did not earn any interest. Those statements affirmatively represented the Customers' assets earned zero dollars in interest. In

actuality, Defendants' Customers earned interest on their cash, and Defendants wrongfully kept it for themselves.

### III.   CLASS ALLEGATIONS

28.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the defined classes below.

29.     **Numerosity of Classes:** The members of the Classes are so numerous that joinder of all members is impractical. Defendants act as the custodian and affiliated service provider for over roughly 60,000 Customer benefit plans, all of whom could bring claims for these violations. Joining each plan and each participant is impractical and a waste of judicial resources.

30.     **Existence of Predominance of Common Questions of Fact and Law:** Moreover, numerous questions of law and fact are common to the Classes and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a.   Whether Defendants are a fiduciary of the Plan and Classes;

b.   Whether Defendants entered into prohibited transactions under ERISA;

c.   Whether Defendants met an exception under the prohibited transactions section of ERISA;

d.   Whether Defendants retained 12b-1 fees;

e.   Whether Defendants disclosed 12b-1 fees;

f.   If Defendants disclosed 12b-1 fees, was the disclosure adequate under ERISA;

g.   Whether Defendants retained non-float interest on cash assets;

h.   Whether Defendants disclosed non-float interest on cash assets;

i.  If Defendants disclosed non-float interest on cash assets, whether the disclosure was adequate under ERISA;

j.  Whether Defendants retained float interest on cash assets;

k.  Whether Defendants disclosed float interest on cash assets to its Customers;

l.  If Defendants disclosed float interest on cash assets, whether the disclosure was adequate under ERISA;

m.  Whether Defendants breached their fiduciary duties under ERISA by engaging in the conduct described herein;

n.  Whether Defendants breached their fiduciary duties under state law by engaging in the conduct described herein;

o.  Whether Defendants were unjustly enriched for retaining the Funds;

p.  Whether the Funds were the property of the Classes;

q.  Whether Defendants unjustly retained the property of the Classes;

r.  Whether Plaintiffs are entitled to injunctive relief requiring Defendants to stop its practice of retaining float interest on cash assets;

s.  Whether Plaintiffs are entitled to equitable relief requiring Defendants to return the Funds to their customers;

t.  Whether Plaintiffs are entitled to injunctive relief requiring Defendants to stop its practice of failing to disclose float interest on cash assets to its Customers; and

u.  Whether Defendants raise any affirmative defenses that are universal in application.

31.    **Typicality:** Plaintiffs' claims are typical of the members of each Class because they are all based on the same nondisclosures. Defendants used the same form custodial account documents for all members of each Class who executed it, but the documents did not provide the

required disclosures. Defendants also maintain the custodial account documents in a Customer specific file in the same way for all members of each Class. Defendants' website further confirms that it uses the same custodial account agreement. Further, Defendants did not provide the required disclosures to the Class in any other way. Thus, whether each Class member executed the custodial agreement or not, Defendants failed to make their required disclosures concerning the Funds.

32.     **Adequacy:** Plaintiffs will also fairly and adequately represent the Classes, and have retained counsel experienced and competent in the prosecution of ERISA litigation and class actions. Plaintiffs have no interests antagonistic to those of other members of the Classes. Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action. Plaintiffs' counsel has also committed the resources to adequately represent the Class.

33.     **Superiority:** This action may be properly certified under Federal Rule of Civil Procedure 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Classes would create a risk of adjudications with respect to individual members of the Classes that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

34.     Alternatively, this action may also be properly certified under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive, declaratory, or other appropriate equitable relief applicable to the Classes as a whole.

35.     Additionally, this action can be properly certified under Rule 23(b)(3) because the questions of law or fact stated above that are common to all Class members predominate over any questions affecting only individual members and the class action is a superior method for fairly and effectively adjudicating the controversy.

## IV.     CLASS DEFINITIONS

39.     This class action is divided into the following Classes:

**ERISA 12b-1 Class:** All of Defendants' Customers which were ERISA qualified plans whose assets generated 12b-1 fees that Defendants retained.

**Non-ERISA 12b-1 Class:** All of Defendants' Customers which were not ERISA qualified plans whose assets generated 12b-1 fees that Defendants retained.

**ERISA Non-Float Class:** All of Defendants' Customers which were ERISA qualified plans whose cash assets generated interest when not in a float status that Defendants retained.

**Non-ERISA Non-Float Class:** All of Defendants' Customers which were not ERISA qualified plans whose cash assets generated interest when not in a float status that Defendants retained.

**ERISA Float Class:** All of Defendants' Customers that were ERISA qualified plans whose cash assets generated interest when in a float status that Defendants retained.

**Non-ERISA Float Class:** All of Defendants' customers that were not ERISA qualified plans whose cash assets generated interest when in a float status that Defendants retained.

40.     Hereinafter, the ERISA 12b-1 Class, the ERISA Non-Float Class, and the ERISA Float Class shall be referred to collectively as the "ERISA Classes." The Non-ERISA 12b-1 Class, the Non-ERISA Non-Float Class, and the Non-ERISA Float Class shall be referred to collectively as the "Non-ERISA Classes." Both the ERISA Classes and the Non-ERISA Classes shall be referred to collectively as the "Classes."

## V.  PARTIES

41.  Plaintiff MBA Engineering, Inc. ("MBA") is a corporation organized and existing under the laws of Minnesota, with its principal place of business in Shoreview, Minnesota. MBA is the Plans' Sponsor under ERISA 29 U.S.C. § 1002(16)(A), the Plans' Administrator under ERISA 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plans under ERISA 29 U.S.C. §§ 1002(21)(A), 1102. As a fiduciary with respect to the Plans, MBA may bring this action against Defendants pursuant to ERISA. 29 U.S.C. §§ 1132(a)(2-3). Like all putative Class members, MBA had custodial accounts for each of the Plans with Defendants which produced 12b-1 fees, float interest, and non-float interest which Defendants retained.

42.  Plaintiff MBA Engineering, Inc. 401(k) Plan ("MBA 401(k) Plan") is a qualified plan under ERISA with legal status to sue in its own right. 29 U.S.C. § 1132(d). Like all putative Class members, the MBA 401(k) Plan was a Customer of Defendants, and its assets generated 12b-1 fees, float interest, and non-float interest, all of which Defendants retained.

43.  Plaintiff MBA Engineering, Inc. Cash Balance Plan ("MBA Cash Plan") is a qualified plan under ERISA with legal status to sue in its own right. *Id.* Like all putative Class members, the MBA Cash Plan was a Customer of Defendants, and its assets generated 12b-1 fees, float interest, and non-float interest, all of which Defendants retained.

44.  Plaintiff Craig Meidinger is an individual. Mr. Meidinger is the owner of MBA, and Trustee of the Plans. As Trustee of the Plans, Mr. Meidinger is a fiduciary with respect to the Plans under ERISA 29 U.S.C. §§ 1002(14)(A), 1102. As a fiduciary with respect to the Plans, Mr. Meidinger may bring this action against Defendants pursuant to ERISA. 29 U.S.C. § 1132(a)(2–3).

45.     Defendant Matrix Trust Company is a bank incorporated under the laws of Delaware, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. Matrix is a fiduciary to the Plans pursuant to ERISA 29 U.S.C. §§ 1002(21)(A), 1102(a)(1), 1103(a), because it, in fact, exercised authority and control over the management or disposition of the Plans' assets. See also *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (citing 29 U.S.C. § 1002(14)(A) and holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA."). Matrix "will, by definition, always be a fiduciary under ERISA as result of its authority or control over plan assets." Employee Benefits Security Administration, United States Department of Labor, Field Assistance Bull. No. 2004-03, Fiduciary Responsibilities of Directed Trustees (2004). Matrix is also a service provider to the Plans as defined by the DOL because it entered into contracts with the Plans or the TPA's of the Plans to perform services and expected compensation of over $1,000. 29 C.F.R. § 2550.408b-2(c)(1)(iii). Matrix exercised control over the Plans' and Class members' assets by depositing them in an account at a separate financial institution over which it had exclusive control, writing checks to be paid by the Plans' assets, directing wire transfers to be paid by the Plan's assets, and retaining the Funds without disclosing them.

46.     Defendant Matrix Settlement & Clearance Services, LLC ("MSCS") is a wholly-owned subsidiary of the same parent company as Matrix. MSCS is incorporated under the laws of Delaware, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. Matrix contracted with MSCS to perform services for the Plans and Class members. MSCS accepted compensation for those services from the Plans and Class members. MSCS is also a fiduciary to the Plans pursuant to ERISA 29 U.S.C. §§ 1002(21)(A), 1102(a)(1), 1103(a), because it, in fact, exercised authority and control over the management or disposition of

the Plans' assets by retaining the Funds without disclosing them. MSCS is also a service provider

to the Plans and Class members as defined by the DOL because it entered into contracts with the

Plans or for the Plans to perform services and expected compensation of over $1,000. 29 C.F.R.

§ 2550.408b-2(c)(1)(iii). MSCS provided customer service support functions to the Plans' and

Class members which included handling contributions, disbursements, investments, addressing

questions, and other actions. MSCS also developed software it licensed to Matrix to automate some

of these Customer service function. Matrix used that software for the Plans' and all Class members.

## VI.    JURISDICTION

47.    The Court has subject matter jurisdiction over this class action under 28 U.S.C.

§ 1332(d)(2) as the aggregate value of the case is over $5,000,000 and several members of the

putative class are citizens of a different state from the Defendant.

48.    The Court has personal jurisdiction over Defendants because Defendants have

sufficient minimum contacts with the United States and with Texas to satisfy due process. ERISA

allows for broad nationwide service of process on defendants in any district where they reside or

may be found. *Id.* When a federal statute allows for nationwide service of process, the minimum

contacts inquiry turns to whether the defendant has minimum contacts with the United States. *Bush*

*v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Leaf Trading*

*Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-03200-N, 2018 WL 2971135, at *1–2 (N.D. Tex.

March 16, 2018); *Mba Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L (BK),

2019 U.S. Dist. LEXIS 106209, at *8 (N.D. Tex. March 5, 2019). Because Defendants are

incorporated in Delaware and have their principal place of business in Colorado, Defendants have

minimum contacts with the United States. *See Bush*, 11 F.3d at 1258; *Leaf Trading Cards*, 2018

WL 2971135, at *1–2. Moreover, Defendants do business in the state of Texas, including acting

as the custodian for many Texas plans and hundreds of plans which are/were administered in Texas. Defendants have also not opposed personal jurisdiction in other cases in this District. *See Mba Eng'g*, 2019 U.S. Dist. LEXIS 106209, at *8.

## VII.   VENUE

49.     Venue properly lies in the Northern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) for two reasons. First, this district is where many of the Class's ERISA plans were administered. 29 U.S.C. § 1132(e)(2). Over 100 ERISA qualified plans and Class members were administered in the Northern District of Texas. *See* Def. Matrix's Answer and Counterclaims at ¶ 10, *Mba Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L (BK), (N.D. Tex. March 5, 2019) ("Matrix entered into Custodial Agreements with many of the more than 100 plans for which Vantage [a business located in the Northern District of Texas] acted as TPA").

50.     Second, for venue purposes, Defendants reside in this district. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir. 2000). Where a defendant resides for ERISA venue purposes, is wherever a defendant is subject to personal jurisdiction. *Id.*; *Frost v. ReliOn, Inc.*, No. 3:06-CV-0822-GECF, 2007 WL 670550, at *5–6 (N.D. Tex. March 2, 2007). Therefore, because ERISA allows for personal jurisdiction over a defendant that maintains minimum contacts with the United States, Defendants reside in Texas and venue is proper. *Frost*, 2007 WL 670550, at *5–6.

51.     This District Court has also already determined this district to be a proper venue for unrelated litigation between Plaintiffs and Matrix. *See Mba Eng'g*, 2019 U.S. Dist. LEXIS 106209, at *8.

## VIII.   CAUSES OF ACTION

### A.   COUNT I – ERISA PROHIBITED TRANSACTIONS
### (By Plaintiffs and the ERISA Classes against all Defendants)

52.   Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

53.   ERISA § 406(a–b) provides, in relevant part, that:

(a)(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect—

 . . . .

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. . .

(b) A fiduciary with respect to a plan shall not—

(1) Deal with the assets of the plan in his own interest or for his own account, . . . or

 . . .

(3) Receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(a–b) ("Prohibited Transactions").

54.   ERISA § 409 makes a fiduciary who breaches any of the fiduciary responsibilities under ERISA, including entering into a prohibited transaction, liable to the Plans for any losses sustained by the Plans, for any profits the fiduciary received from the Plans' assets, and any other equitable or remedial relief. 29 U.S.C. § 1109. These Prohibited Transactions were made to provide courts bright line rules and per se violations of ERISA fiduciary duties. *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983).

55.     Fiduciary status under ERISA is to be construed liberally and is to be analyzed in light of the actions alleged. *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002). ERISA provides that an entity is a fiduciary if it "functions" as a fiduciary. 29 U.S.C. § 1002(21)(A). An entity functions as a fiduciary if it "exercises *any* authority or control respecting management or disposition of its assets." *Id.* (emphasis added).

56.     At all relevant times, Defendants were fiduciaries with respect to the Class. *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA" and citing 29 U.S.C. § 1002(14)(A)).

57.     The Class assets were held in accounts operated by Defendants. Each of the Class assets generated the Funds that Defendants unilaterally collected, retained, and/or disposed of under the claim of compensation. Under general property principals, interest and fees generated from assets are the property of the owners of the underlying assets; therefore, the Funds produced by the Class assets remain the property of the Class. Because Defendants were without any authority to retain and/or dispose of the fees and interest accrued, Defendants' actions constitute actual authority and control over the management and disposition of the Class assets—making Defendants functioning fiduciaries.

58.     Defendants entered into three (3) types of Prohibited Transactions by retaining the Funds, which were Class assets. *See* 29 U.S.C. § 1106(a-b). First, under ERISA § 406(a)(1)(D), a fiduciary is liable if it causes the direct or indirect transfer to, use by, or for the benefit of a party in interest of the plan assets. 29 U.S.C. § 1106(a)(1)(D). ERISA defines a "party in interest" as a fiduciary of a plan or a service provider of the plan. 29 U.S.C. § 1002(21)(a-b). Defendants in this case, as stated above, are functional fiduciaries and service providers because they provided

custodial services to each Class member. Moreover, because the Funds are Class assets, retaining the Funds for the benefit of Defendants constitutes a prohibited transaction. Therefore, Defendants are liable to the Class for all of the Funds they retained as well as any profit that they derived from the Funds. Further, Plaintiffs expressly plead, in addition or in the alternative, that any payment of the Funds, or portions thereof, by Matrix to MSCS or any other party in interest, including third party administrators, constituted prohibited transactions for which Matrix cannot establish an exception and is therefore liable.

59.     Second, under ERISA § 406(b)(1), a fiduciary is prohibited from dealing with plan assets in its own interest. 29 U.S.C. § 1106(b)(1). By retaining the Funds or paying them to parties in interest without disclosure, Defendants have kept the plan assets for themselves or exercised their own judgment as to their disposition. Because Defendants are fiduciaries and service providers to the Class members, Defendants entered into a prohibited transaction by dealing with Class assets in their own interest.

60.     Third, under ERISA § 406(b)(3), a fiduciary is prohibited from receiving for itself any consideration from any party dealing with the plan from a transaction involving the assets of the plan. 29 U.S.C. § 1106(b)(3). Here, third parties paid Defendants the Funds that were generated from the Class assets. Defendants then retained the Funds for themselves. Because Defendants retained the Funds, they have received consideration for transactions involving plan assets—a prohibited transaction.

61.     Defendants have the burden to establish and cannot establish they meet an exemption from liability for a Prohibited Transaction because they did not disclose the existence, payment, or their retention of the Funds. ERISA § 408(b) removes certain transactions from the Prohibited Transaction list in § 406. 29 U.S.C. § 1108(b). The only potential exemption that would

allow Defendants to retain the fees and interest is ERISA § 408(b)(2). 29 U.S.C. § 1108(b)(2). This section allows a fiduciary to enter into a contract with a party in interest for services for the plan if **no more than reasonable compensation is paid**. *Id.* (Emphasis added).

62.     However, compensation is per se not reasonable. Compensation will only be deemed reasonable if the fiduciary provides strict disclosures of the compensation. In 2012, the Department of Labor ("DOL"), pursuant to Congressional delegation and *Chevron* deference, determined that no compensation is reasonable if it is not disclosed to the ERISA plan. 29 C.F.R. § 2550.408b-2(c)(1)(i) ("No contract or arrangement for services between a covered plan and a covered service provider . . . is reasonable within the meaning of Section 408(b)(2) of the Act . . . unless the [disclosure] requirements of this paragraph (c)(1) are satisfied."). Compensation covered by this regulation includes 12b-1 fees, float interest, and non-float interest. *See* 29 C.F.R. § 2550.408b-2(c)(1)(i).

63.     To assist with disclosure requirements for ERISA fiduciaries and service providers, the DOL issued a Field Assistance Bulletin laying out several requirements for disclosing float income to avoid entering into a Prohibited Transaction. DOL Field Assistance Bulletin No. 2002-03. These requirements include: (1) disclosing "specific circumstances under which float will be earned and retained"; (2) establishing, disclosing, and adhering to specific time frames float cash will be invested; (3) disclosing when float period commences; and (4) disclosing the rate or manner of determining float interest rate. *Id.*

64.     Here, Defendants failed to make any disclosures of the 12b-1 fees, float interest, or non-float interest they retained. This includes Defendants' failure to follow the Department of Labor's Bulletin requirements. Additionally, Defendants presented inaccurate account statements to the Plaintiffs and Class members to make it appear that their assets did not generate any interest.

This is false because the assets earned interest and Defendants kept it for themselves. Because Defendants did not disclose that they retained the Funds as compensation, this compensation is per se unreasonable. By retaining the Funds, Defendants entered into Prohibited Transactions that fall outside the protection of an exemption. Therefore, Defendants are liable to the Class for all of the Funds retained as well as any profits that were generated from the use of these Class assets.

### B.     COUNT II – BREACH OF FIDUCIARY DUTY
### (By Plaintiffs and the ERISA Classes against all Defendants)

65.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

66.     As described above, the Class assets in Defendants' custody generated the Funds that Defendants in their sole authority collected, retained, and/or disposed of under the claim of compensation. Because Defendants lacked any authority to retain or dispose of the Funds, Defendants' actions constitute actual authority and control over the management and disposition of the Class assets, making Defendants functioning fiduciaries under ERISA. 29 U.S.C. § 1002(21)(A).

67.     Defendants breached their fiduciary duties under ERISA to act solely for the benefit of the Plans and to act with the "care, skill, prudence, and diligence" ERISA requires by retaining the Funds without disclosing the existence and retention of the Funds. 29 U.S.C. § 1104(a)(1).

68.     Defendants also failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *Id.*

69.     By retaining the Funds, Defendants acted against the best interest of the Plans by receiving compensation that was never disclosed or contemplated by the Plans. As fiduciaries,

Defendants had an obligation to disclose that they had the right to receive fees and interest as compensation and the amount that they would retain on a consistent periodic basis.

70.     By failing to disclose the Funds that Defendants retained, Defendants breached their fiduciary duties causing the Class to lose millions of dollars. Defendants are liable to the Class under ERISA for all harm the Class has suffered as a result of Defendants' breaches.

71.     As fiduciaries, Defendants may not disclaim any responsibilities under ERISA. 29 U.S.C. § 1110. Accordingly, any provision of the agreements which Defendants may contend relieves it of or limits its responsibility is invalid.

### C.     COUNT III – EQUITABLE RELIEF UNDER ERISA
#### (By Plaintiffs and the ERISA Classes against all Defendants)

72.     Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

73.     Alternatively even if Defendants are not fiduciaries, an ERISA plan or fiduciary may seek restitution and other equitable relief from non-fiduciary parties in interest to prohibited transactions. 29 U.S.C. §§ 1106, 1132(a)(3); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000); *Perez*, 823 F.3d at 272–75. If a non-fiduciary receives plan assets in violation of the prohibited transaction provision, the non-fiduciary will then be required to restore the plan assets to the plan and disgorge any profits derived from the plan assets. *Salomon*, 530 U.S. at 250.

74.     A party in interest includes somebody that provides services to an ERISA plan. 29 U.S.C. § 1002(14)(B). A service provider includes a custodian of plan assets who receives compensation for its services. 29 C.F.R. § 2550.408b-2(c)(1)(iii)(C).

75.     Defendants are service providers to each of the Class plans as they provided services for the Class assets. As service providers, Defendants are parties in interest to prohibited transactions.

76.     Non-fiduciary service providers, like fiduciaries, may not retain compensation without disclosing it to the applicable plan. 29 C.F.R. § 2550.408b-2(c)(1)(i) ("The requirements of this paragraph (c)(1) are independent of fiduciary obligations under section 404 of the Act."); DOL Field Assistance Bulletin No. 2002-03. Failure to disclose the compensation constitutes a prohibited transaction. 29 C.F.R. § 2550.408b-2(c)(1)(i); DOL Field Assistance Bulletin No. 2002-03.

77.     As stated above, Defendants retained or disposed of the Funds without disclosing that information to Plaintiffs or the Class. Because Defendants were service providers and failed to comply with ERISA disclosure requirements, the Class is entitled to all the Funds retained by Defendants as well as the profits earned on those Funds.

### D.     COUNT IV – STATE LAW BREACH OF FIDUCIARY DUTY
### (By Plaintiffs and the Non-ERISA Classes against all Defendants)

78.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

79.     For the Non-ERISA Classes, Defendants have breached their state law fiduciary duties.

80.     Defendants are fiduciaries to the Non-ERISA Class under statute. *See* Colo. Rev. Stat. §§ 15-1-507, 15-1-509, 15-1-510. Specifically, Defendants are Colorado trust companies who act as custodians. Because they are custodians, Defendants are deemed as fiduciaries. *Id.* § 15-1-507.

81.     Under statute, Defendants owed the Non-ERISA Class a duty to act reasonably and equitably with due regard to their obligations and responsibilities toward the interests of the beneficiaries.

82.     The property held by Defendants as custodians of the Class is fiduciary property. *Id.* Under general property law, all interest or fees generated from the principal remains the property of the principal. Because the Class assets generated the Funds, the Funds were also Class assets. By retaining the Funds for themselves or disposing of them, Defendants violated their fiduciary duty to the Class members.

83.     Moreover, Defendants are fiduciaries to the Non-ERISA Class under common law agency principles. Defendants were agents of the Class. Specifically, the agreements between the parties expressly provide for the agency relationship. As agents, Defendants are fiduciaries to the Class.

84.     As agents, Defendants owed the Non-ERISA Class multiple fiduciary duties. Those duties include: (1) to act with care, competence, and diligence normally exercised by agents in similar circumstances; (2) to take action only within the scope of actual authority; (3) to act reasonably and refrain from conduct likely to damage the Non-ERISA Class; (4) to use reasonable efforts to notify the Non-ERISA Class of material facts Defendants knew, had reason to know, or should have known; (5) to act loyally to the Non-ERISA Class's benefit; and (6) to act in accordance with the express and implied terms of the agency agreement.

85.     Defendants breached each one of these duties by retaining the fees and interest that rightfully belonged to the Non-ERISA Class. Moreover, Defendants knew that they were retaining the fees and interest that were generated by the Non-ERISA Class assets and never attempted to

notify the Non-ERISA Class. By retaining the assets rightfully belonging to the Non-ERISA Class, Defendants damaged the Non-ERISA Class.

86.     As a result of these breaches, the Non-ERISA Class suffered harm by losing the Funds and the earnings that would have been generated by the Funds. Therefore, Defendants are liable to the Non-ERISA Class for all harm that they have suffered as a result of Defendants' breaches.

87.     Defendants' breaches also constitute willful and wanton conduct because they purposefully retained the Funds that belonged to the Non-ERISA Class. Accordingly, the Non-ERISA Class is entitled to exemplary damages. Colo. Rev. Stat. § 13-21-102.

### E.      COUNT V – UNJUST ENRICHMENT
### (By Plaintiffs and all the Classes against all Defendants)

88.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

89.     Unjust enrichment is a state common law remedy that occurs when a person has wrongfully secured a benefit or passively received one which would be unconscionable to retain. *See Scott v. Scott*, 428 P.3d 626, 636 (Colo. Ct. App. 2018); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The ERISA Class[2] also brings this claim in the alternative if the Court does not find that Defendants are a fiduciary. *See Smith v. Provident Bank*, 170 F.3d 609, 616–17 (6th Cir. 1999); *Sky Toxicology, Ltd. v. United Healthcare Ins., Co.*, 5-16-cv-01094-FB-RBF, 2018 U.S. Dist. LEXIS 150245, at *14–17 (W.D. Tex. Sept. 4, 2018); *Kersh v. United Healthcare Ins., Co*, 946 F. Supp. 2d 621, 638–39 (W.D. Tex. 2013).

90.     Under general and long-standing common law principles, interest and fees belong to the owner of the principal whereby they were generated. For instance, if a person owns $100

---

[2] Along with the Non-ERISA class.

and that $100 generates $5 in interest, the person who owned the $100 also owns the $5. Here, the Class assets generated the Funds. Therefore, based on property law, the Class owns the Funds.

91.     However, Defendants retained the Funds. By retaining these Funds, Defendants deprived the Class of their rightful property. Because the Funds are the property of the Class, it would be unjust to allow the Defendants to remain in possession of the Funds. Therefore, the Funds retained by Defendants should be restored to the Class.

### F.     COUNT VI – CONVERSION
#### (by Plaintiffs and all the Classes against all Defendants)

92.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

93.     The Class brings this claim for conversion against Defendants for the retention of the Funds. The ERISA Class also brings this claim in the alternative if the Court finds that Defendants were not fiduciaries. *See Smith*, 170 F.3d at 616–17; *Sky Toxicology,* 2018 U.S. Dist. LEXIS 150245, at *14–15; *Kersh*, 946 F. Supp. 2d at 638–39.

94.     Defendants wrongfully exercised dominion and control over property belonging to the Class. As stated above, the Funds are the property of the Class under general property rules that "interest follows principal." Defendants retained the Funds wrongfully and without authorization to do so.

95.     Therefore, the Class is entitled to restitution of the Funds held by Defendants that were generated from Class assets along with damages.

### G.     COUNT VII – MONEY HAD & RECEIVED
#### (by Plaintiffs and all the Classes against all Defendants)

96.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

97. The Class brings this claim for money had and received against Defendants for the retention of the Funds. The ERISA Class also brings this claim in the alternative if the Court finds that Defendants were not fiduciaries. *See Smith*, 170 F.3d at 616–17; *Sky Toxicology,* 2018 U.S. Dist. LEXIS 150245, at *14–15; *Kersh*, 946 F. Supp. 2d at 638–39.

98. Defendants hold money that, in equity and good conscience, belongs to Plaintiffs. Specifically, the Funds under general property law belong to the Class. Defendants had no authority to retain these Funds and never disclosed that they were retaining the Funds. Also, Defendants affirmatively stated that the Class assets did not produce interest when in fact Defendants were retaining the interest.

99. Therefore, in good conscience, the Plaintiffs are entitled to restitution of the Funds that Defendants retained from Class assets.

## IX.    JURY DEMAND

100. Plaintiffs hereby demand, individually and on behalf of the Class members a trial by jury.

## X.    DAMAGES

WHEREFORE, Plaintiffs, on behalf of themselves and as representative of all others similarly situated, respectfully requests that this Court enter judgment as follows:

a. Declaring that this action is properly maintainable as a class action;

b. Certifying the Class according to the definitions above;

c. Naming Plaintiffs' Counsel as Class Counsel;

d. Naming Plaintiffs as Class Representatives;

e. Awarding the Class the amount of 12b-1 fees, float interest, and non-float interest retained by Defendants to put Plans in the position they would have been in but for Defendants' improper self-compensation;

f.   Attorney's fees and other costs of court;

g.   Pre- and post-judgment interest; and

h.   Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

MCCATHERN, PLLC

/s/ Arnold Shokohi
Arnold Shokouhi
State Bar No. 24056315
arnolds@mccathernlaw.com
Justin N. Bryan
State Bar No. 24072006
jbryan@mccathernlaw.com
D. Aaron Dekle
State Bar No. 24100961
ddekle@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-1741

Evan Selik
*PRO HAC VICE APPLICATION FORTHCOMING*
California Bar No. 251039
eselik@mccathernlaw.com
523 West Sixth Street, Suite 830
Los Angeles, California 90014
Telephone: (213) 225-6150
Facsimile: (213) 225-6151

**ATTORNEYS FOR PLAINTIFFS**